```
                  UNITED STATES DISTRICT COURT
                  EASTERN DISTRICT OF LOUISIANA


DUNE ENERGY, INC.                              CIVIL ACTION

VERSUS                                         NO: 15-0309

CHEVRON U.S.A., INC.                           SECTION: "A" (5)
```

## ORDER AND REASONS

Before the Court is a **Motion to Dismiss for Failure to State a Claim upon which Relief May be Granted (Rec. Doc. 7)** filed by Defendant Chevron U.S.A., Inc. Plaintiff Dune Energy, Inc. opposes the motion. The motion, set for submission on June 3, 2015, is before the Court on the briefs without oral argument.[1]

## I. BACKGROUND

Plaintiff Dune Energy, Inc. filed its Complaint on February 2, 2015. This matter arises out of alleged environmental concerns and costs related to a compressor station in the Garden Island Bay Field in or adjacent to navigable waters in Plaquemines Parish. Plaintiff alleges that it is the current operator of the field in which the compressor station sits.[2] It claims that Defendant, as a "successor by merger with Texaco," formerly operated the field and station prior to abandoning the station. Defendant allegedly

---

[1] The Court declines the request for oral argument as it finds it would be unnecessary to decide the issues before it.

[2] Plaintiff also alleges that it "has not operated the [c]ompressor [s]tation" as of the time of filing.

1

maintained ownership of the station even after concluding its production activities in the field.

Plaintiff contends that asbestos-containing materials, a "hazardous substance" under the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9601, et seq., were present in the station at the time of Defendant's abandonment. It alleges that the station was in a state of disrepair, that materials were degrading and becoming friable, and that Defendant did nothing to remedy or prevent the actual or potential releases of asbestos. Allegedly, the situation only worsened upon Defendant's abandonment of the station and resulted in actual or potential releases to the surrounding air and water.

Plaintiff states that the Louisiana Department of Natural Resources has ordered it to present a remediation plan for any past or ongoing releases and to act to prevent any future releases, and that it has incurred costs in implementing these orders.

Plaintiff brings the current action for cost recovery or contribution from Defendant in an "equitable portion" under federal law via 42 U.S.C. § 9607, or, in the alternative, § 9613, as well as under state law via the Louisiana Environmental Quality Act ("LEQA"), La. R.S. § 30:2271, et seq.

Via the instant motion, Defendant seeks to dismiss all claims

of Plaintiff for failure to state a claim.[3]  Defendant argues that Plaintiff has not properly pleaded factual allegations to support the necessary elements under any of the stated claims.

## II.  STANDARD OF REVIEW

In the context of a motion to dismiss the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor.  *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009) (citing *Tellabs, Inc. v. Makor Issues & Rights*, Ltd., 551 U.S. 308 (2007); *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Lovick v. Ritemoney, Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004)).  However, the foregoing tenet is inapplicable to legal conclusions.  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  Thread-bare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.  *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550, U.S. 544, 555 (2007)).

The central issue in a Rule 12(b)(6) motion to dismiss is whether, in the light most favorable to the plaintiff, the

---

[3] The Court notes Defendant's argument that Plaintiff did not correctly clarify that it was pleading its federal actions in the alternative as the claims are mutually inconsistent.  The Court, while appreciating Defendant's technical notation, will construe the pleading as having stated them in the alternative to the extent necessary, rather than having Plaintiff amend its Complaint to so clarify.  Further, the Court notes that this point is not as clear a matter of general black-letter law as Defendant might represent.  The Supreme Court noted in *United States v. Atlantic Research* that in certain grey areas it is an open question as to whether incurred costs might be "recoverable under § 113(f), § 107(a), or both.".  551 U.S. 128, 139 n.6 (2007).

complaint states a valid claim for relief. *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (quoting *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008)). To avoid dismissal, a plaintiff must plead sufficient facts to "state a claim for relief that is plausible on its face." *Id.* (quoting *Iqbal*, 129 S. Ct. at 1949). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The Court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Id.* (quoting *Plotkin v. IP Axess, Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)). Legal conclusions must be supported by factual allegations. *Id.* (quoting *Iqbal*, 129 S. Ct. at 1950).

**III. ANALYSIS**

Each action asserted by Plaintiff, and Defendant's arguments as to why each should be dismissed, will be discussed separately below.

**a. 42 U.S.C. § 9607**

Under this statute, a private party has the "right to bring a cost-recovery action against 'responsible persons' for costs associated with responding to an environmental threat." § 9607; *Uniroyal Chem. Co., Inc. v. Deltech Corp.*, 160 F.3d 238, 242 (5th Cir. 1998). A plaintiff must establish the following four elements to state a prima facie case: 1.) the site is a "facility"; 2.) that

the defendant is a "responsible person"; 3.) that a release or threatened release of a hazardous substance has occurred; and 4.) that the release or threatened release has caused the plaintiff to incur response costs. *Vine Street, LLC v. Borg Warner, Corp.*, 776 F.3d 312, 315 (5th Cir. 2015). The parties do not dispute that the station is a facility within the meaning of 42 U.S.C. § 9601(9).

Defendant argues that based on Plaintiff's allegations, it cannot be considered a "responsible person" under 42 U.S.C. § 9607(a) as a matter of law. § 9607(a) provides, in pertinent part, that a covered party or potentially responsible party includes "any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of."[4] § 9607(a)(2). Defendant argues that it is not such

---

[4] In a footnote in its memorandum, Defendant further argues that asbestos-containing materials are not included within the definition of "disposal," as the statute defines that term by reference to the Solid Waste Disposal Act, 42 U.S.C. 6901, et seq. § 9601(29)("The terms 'disposal', 'hazardous waste', and 'treatment' shall have the meaning provided in section 1004 of the Solid Waste Disposal Act."). The definition of disposal within that statutory scheme is "the discharge, deposit, injection, dumping, spilling, leaking, or placing of any solid waste or hazardous waste into or on any land or water so that such . . . waste . . . may enter the environment or be emitted into the air or discharged into any waters . . . ." § 6903(3). Defendant contends that as asbestos is not considered in that scheme's definitions as "solid waste" or "hazardous waste," it cannot be the subject of a disposal action. This argument is not without support. *See 3550 Stevens Creek Assoc. v. Barclays Bank*, 915 F.2d 1355, 1361 (9th Cir. 1990)(noting that, "[o]n its face 'disposal' pertains to 'solid waste or hazardous waste,' not to building materials which are neither."). This Court, however, does not accept the strained reading suggested by Defendant. Congress chose to write § 9607 as applying in the context "of disposal of any *hazardous substance*." § 9607(a)(2)(emphasis added). There is no question that asbestos is considered a hazardous substance within the meaning of the statute. *See Dayton Indep. Sch. Dist. v. U.S. Mineral Prods. Co.*, 906 F.2d

a party as Plaintiff has alleged only that Defendant "abandoned" and subsequently sold the station, and neither abandonment nor sale constitutes a disposal.  In support of this argument, Defendant cites to cases which it argues stand for the proposition that a mere sale of a property cannot constitute disposal and that some affirmative act was required.  *Sycamore Indus. Park Assoc. v. Ericsson, Inc.*, 546 F.3d 847 (7th Cir. 2008); *G.J. Leasing Co., Inc. v. Union Elec. Co.*, 54 F.3d 379 (7th Cir. 1995)(Posner, C.J.); *3550 Stevens Creek Assoc. v. Barclays Bank*, 915 F.2d 1355 (9th Cir. 1990).

Plaintiff responds that Defendant's arguments regarding "disposal" do not give the cases the nuanced reading that their reasoning requires.  Plaintiff contends that the cases do not bar a finding of disposal where a prior owner and operator abandoned the use of a structure and allowed it to fall into a state of disrepair, and took no steps to prevent the asbestos within from

---

1059, 1064 (5th Cir. 1990); § 9602; 29 C.F.R. § 302.4.  To give this the reading suggested by Defendant would be to substitute the explicit Congressionally-chosen verbiage with a meaning gathered by cherry-picking part of a referenced definition in a separate statutory scheme.  *See CP Holdings, Inc. v. Goldberg-Zoino & Assoc., Inc.*, 769 F. Supp. 432, 437 (D. N.H. 1991)(observing that, under such a reading, "[s]ections of the CERCLA statute regarding the disposal of hazardous substances . . . would have to be either ignored or read to mean only the disposal of hazardous wastes").  Regardless of what the courts or counsel might say about the drafting of CERCLA, it is not the proper province of the courts to edit or replace its terms of art as they see fit.  *See, e.g.*, *United States v. W.R. Grace & Co.*, 429 F.3d 1224, 1238 (9th Cir. 2005)("It has become de rigeur to criticize CERCLA as a hastily passed statute that is far from a paragon of legislative clarity.").  While appreciating the thorough research by counsel, the Court disregards any argument made on this basis.

becoming friable and releasing into the surrounding environment.

Defendant also argues that Plaintiff has not properly pleaded that there has been a release or a threatened release. It contends that any allegations as to releases to the outside environment are too vague and speculative, and that a release confined to the interior of a building is not a release within the meaning of the statute.

Plaintiff responds that its allegations include the charge that asbestos was escaping and leaking into the outside environment as a result of the degradation allowed by Defendant. Plaintiff further argues that Defendant is applying an improper standard to Plaintiff's burden at this point in the proceedings.

Defendant next contests the sufficiency of Plaintiff's pleading as to any costs incurred, stating that they are also too vague. Defendant also argues that Plaintiff has not pleaded that any costs were incurred "voluntarily," and thus the claim must be dismissed as a matter of law.

Plaintiff responds that it has no duty to itemize specific costs at this point. Further, Plaintiff argues that Defendant misreads the Supreme Court's statements that costs must be incurred "voluntarily" for a § 107 action. It states that this was merely meant to draw a distinction between an action arising from a legal judgment or settlement agreement, and does not preclude a claim resulting from a government oversight body's order.

Finally, Defendant argues that Plaintiff's request for attorney's fees is excluded under § 9607 as a matter of law. Plaintiff does not respond to this argument.

While recognizing the underlying strengths of many of its arguments, and not discounting the difficult road that Plaintiff has ahead of it in proving up its case, the Court will not make the fine legal distinctions Defendant wishes it to draw when so few facts are known at this point.

The disposal question is the most complex of the arguments presented pertaining to § 9607.  Plaintiff seeks to push the frontier of CERCLA's definition of disposal. *C.f G.J. Leasing Co., Inc.*, 54 F.3d at 384 (describing a case in which a court held that CERCLA imposed liability on the vendor of drained batteries where the vendor knew that the vendee dumped hazardous substances after obtaining the batteries as being "at the very frontier of the law"). Defendant is correct, as Plaintiff concedes, that several cases stand for the proposition that sale of a property containing hazardous substances does not constitute CERCLA disposal. However, that holding provides limited assistance in the current case. Those cases premised their findings on certain assumptions or conclusions that are challenged in the allegations before this Court.

For example, the Seventh Circuit addressed the appeal of a case in which the plaintiff brought CERCLA claims under § 9607

against the previous owner of a site that contained a decommissioned power plant. *G.J. Leasing Co., Inc.*, 54 F.3d at 381. The power plant incorporated asbestos into both its structure and equipment. *Id.* at 382. As part of its purchase of the property, the plaintiff arranged for a third-party salvor to strip what it could from the site, including the power plant. *Id.* at 383. After the salvor "went through the power plant like a tornado and left the building a shambles," the plaintiff found loose and deteriorating asbestos in the air and in the facility. *Id.* The plaintiff then removed some of the asbestos and sought to recover its expenditures from the defendant. *Id.* at 383-84. The Seventh Circuit, while reserving judgment on a case in which "the primary purpose and likely effect" of a sale would be the removal of asbestos in circumstances likely resulting in the release of asbestos fibers into the surrounding environment, found that the sale of a building cannot be considered a "disposal" under CERCLA simply because the building contains asbestos fibers exposed to the environment as a result of the unforeseeable negligence of a "buyer's agents." *Id.* at 385. The court observed the "preposterous results" of adopting such an expansive ruling where as many as "700,000 commercial buildings . . . fit this description." *Id.* at 384.

That ruling came with caveats critical to the case before this Court. In what are representative premises for the cases cited by

9

Defendant, the Seventh Circuit made two notes which require consideration. First, as the Fifth Circuit has also noted, if the release of asbestos happens only *within* the building, CERCLA does not govern the case. *Id.* at 385; *Dayton*, 906 F.2d at 1066 (favorably citing cases which have come to this conclusion). Second, the Seventh Circuit stated "[w]e are assuming that there was no asbestos leaking at the time of the sale, hence no 'disposal' of a hazardous substance." *Id.*; *Stevens Creek*, 915 F.2d at 1361 (making a similar observation); *Sycamore*, 546 F.3d at 851 (same). The court stated that this was a factual question and that the district court had not been clearly erroneous in its finding that no leak had occurred. *Id.*

First, it would provide a clear limiting principle to the policy concern referenced above. Second, even more importantly, such an occurrence (leaking at the time of sale) arguably brings the event into the definitions of disposal and release under CERCLA. A further brief exploration of the courts' struggle to define the parameters of "disposal" helps to clarify the logic in keeping this avenue open for CERCLA liability.

Early after its enactment, the courts, including the Ninth Circuit, tended towards a definition of "disposal" that would limit CERCLA's grasp to affirmative acts. *See, e.g.*, *Stevens Creek*, 915 F.2d at 1362 (collecting cases). Due in part though to the tension that this created in the statute's reference to terms such as

10

"spilling" and "leaking," the courts began to back off of such a bright-line distinction and instead focused more on the nature of the event that occurred. *See, e.g.*, *Carson Harbor Village, Ltd. v. Unocal Corp.*, 270 F.3d 863, 875-881 (9th Cir. 2001)("We therefore reject the absolute binary 'active/passive' distinction used by some courts. Indeed, the substantial overlap in terms used to define 'disposal' and 'release' and the presence of both 'active' and 'passive' terms in both definitions suggests something other than an active/passive distinction governs the terms."). The Fifth Circuit has indicated its agreement with this analysis. *See also Uniroyal Chem. Co., Inc. v. Deltech Corp.*, 160 F.3d 238, 252 (5th Cir. 1998)(noting, in an arranger-liability case, that "it is necessary to focus on the *type of activity*")(emphasis in original)(citing *Dayton*, 906 F.2d at 1064-66)).[5]

The paradigmatic example is the abandonment of barrels leaking a hazardous substance.[6] A close summary of Plaintiff's allegations presents a situation in which an owner or operator abandoned a building with full knowledge that it was degrading, that in doing so it was releasing hazardous substances, and that such substances

---

[5] The Fifth Circuit in *Uniroyal* examined the "consumer product in consumer use" exception applicable to the definition of the term "facility" – an issue not disputed by Defendant in the present case.

[6] The CERCLA definition of "release" explicitly includes this example. § 9601(22). The consideration of such an example also caused the Ninth Circuit to move away from its previous active / passive bright line definition of disposal. *See Carson Harbor Village, Ltd.*, 270 F.3d at 879.

were being released not only within the building but also into the surrounding environment.  Despite this, the owner or operator in this example still chose to take no action to remedy the issue.  It is an open question as to whether CERCLA liability might apply assuming fulfillment of the other necessary elements.

The Court at this point does not definitively decide this question, including what, if any, scienter might or could be applicable (given the nature of a CERCLA action).  There are too many factual issues that are unknown at this point – not as a matter of legally deficient pleadings, but as a matter of the gradual unfolding of the litigation process.

The further elements need only be briefly addressed.  Plaintiff has alleged that the degradation of the asbestos "began and continued" during Defendant's ownership and that the "degradation of [it] has, on information and belief, resulted in releases . . . into the environment, including discharges to air and water."  Defendant, noting the overlap in analysis between disposal and release, cites to many of the same cases saying that there is no release where such release is confined to a building.  *See, e.g.*, *Sycamore*, 546 F.3d at 853.  Based on the allegations just recited, and for the reasons stated previously, the Court will not dismiss the Complaint on this basis at this time.

As to the costs incurred, Defendant's argument that Plaintiff has not pleaded that the costs were incurred voluntarily is a

12

misconstrual of the use of that term in *United States v. Atlantic Research*, 551 U.S. 128, 139 n.6 (2007).  That case employed the term merely to describe a scenario in which one incurs costs other than by a legal judgment or settlement.  *Id.*  Thus, that argument is inapplicable here.  Further, the Court finds that Defendant has sufficiently pleaded that it incurred costs and does not need to specifically itemize its costs.  Discovery in this case will further illuminate on just what basis the costs were incurred.

As a final note, the Court will grant the motion as to the requests for attorney's fees arising out of the present litigation.  Plaintiff does not respond to this part of Defendant's motion.  In *Key Tronic Corp. v. United States*, 511 U.S. 809, 819 (1994), the Supreme Court held that "CERCLA § 107 does not provide for the award of private litigants' attorney's fees associated with bringing a cost recovery action."

### b. 42 U.S.C. § 9613

§ 9613 provides for a right of contribution "from any other person who is liable or potentially liable under section 9607(a) of this title, during or following any civil action under section 9606 of this title or under section 9607(a) of this title."  § 9613(f)(1).  Plaintiff has admitted that it is not the subject of a lawsuit.  Plaintiff states that instead it has been "directed by the Louisiana Department of Natural Resources ("LDNR") as a member of the Joint Command of state and federal resource agencies with

jurisdiction over the field" to take evaluative and remedial actions. While the Supreme Court has held open the question of whether an administrative order or other "compelled costs of response" might constitute a "civil action" for purposes of this statute, it has definitively held that there is no claim available under § 9613(f) in a case with very similar facts as those alleged here. *See Atlantic Research*, 551 U.S. at 139 n.6 (2007); *Cooper Indus., Inc. v. Aviall Srvcs., Inc.*, 543 U.S. 157, 168 n.5 (2004).

In *Cooper Indus., Inc. v. Aviall Srvcs., Inc.*, the plaintiff sought contribution via § 9613 from a previous owner and operator of a site where the Texas Natural Resource Conservation Commission had "informed [the plaintiff] that it was violating state environmental laws, directed [the plaintiff] to clean up the site, and threatened to pursue an enforcement action if [the plaintiff] failed to undertake remediation." *Cooper Indus., Inc.*, 543 U.S. at 164. The Court went on to note, "Neither the Commission nor the EPA, however, took judicial or administrative measures to compel cleanup." *Id.* The Supreme Court reversed and remanded the case, holding that the plaintiff could not seek contribution via § 9613 on this basis. *Id.* at 165-68. Plaintiff's current allegations mirror the facts in *Cooper Indus., Inc.* Out of an abundance of caution, the Court will allow Plaintiff to amend its Complaint to clarify whether any administrative order has issued to govern its actions. Otherwise, this claim must be dismissed.

**c.   La. R.S. § 30:2271, et seq.**

The Louisiana Liability for Hazardous Substance Remedial Action statutory scheme, which falls under the Louisiana Environmental Quality Act, provides, in pertinent part, as follows:

> ...
> G. (1) In furtherance of the purpose of R.S. 30:2275, those participating parties who, after an initial demand is made by the secretary under R.S. 30:2275, agree to clean up the pollution source or facility may, without the institution of a suit by the secretary under R.S. 30:2275, sue and recover from any other nonparticipating party who shall be liable . . . .
> ...
> (3) In furtherance of the purpose of this Chapter, a person who has incurred remedial costs in responding to a discharge or disposal of a substance covered by this Chapter, without the need for an initial demand by the secretary, may sue and recover such remedial costs as defined in R.S. 30:2272(9) from any person found by a court to have performed any of the activities listed in Subsection A if the plan for remedial action was approved by the secretary in advance or, if an emergency, the secretary was notified without unreasonable delay and the secretary accepts the plan thereafter. An action by a person other than the secretary shall not be barred by the failure of the secretary to demand participation in the remediation.
> ...
>
> La. R.S. § 2276(G)(1,3).[7]

Defendant's arguments as to disposal, discharge, and costs under § 30:2276 mirror the CERCLA arguments discussed above. *See*

---

[7] "Secretary" refers to Secretary of the Louisiana Department of Environmental Quality.

(Rec. Doc. 7-1, at 20-21; Def.'s Memorandum in Support) (noting that these definitions parallel the meaning of disposal and release under CERCLA); at 22 (arguing the costs are not pleaded with proper specificity). The Court will not repeat its analysis as to these parts.

Defendant also argues that Plaintiff has not alleged that it incurred any costs either voluntarily or before receiving an "initial demand by the secretary," and, thus its claims fail as a matter of law. Plaintiff responds that neither the statutory scheme nor the caselaw interpreting it have defined what constitutes a demand by the secretary, and that its allegations are sufficient to show a demand at this point.

To support its position, Defendant cites to *Margone, L.L.C. v. Addison Resources, Inc.*, 896 So.2d 113 (La. App. 3 Cir. 2004)("*Margone*"). This case provides little support at this point in the proceedings. In *Margone*, the plaintiff was organized by several lessees of the site in question as a response to the instructions of the Louisiana Department of Natural Resources to clean up the site. *Margone*, 896 So.2d at 116. The plaintiff then partially cleaned the site. *Id.* Subsequently, the Louisiana Department of Environmental Quality designated the Louisiana Department of Natural Resources as the lead clean-up agency. *Id.* Shortly thereafter the Department of Natural Resources issued an order demanding that the plaintiff complete the clean-up. *Id.*

16

The Louisiana Third Circuit affirmed a denial of an exception of no cause of action. While it did not define or focus on the term, that court noted the plaintiff's allegation that it "voluntarily completed a partial remediation." *Id.* at 117-18. It also noted that the Department of Natural Resources had been designated as the lead clean-up agency. *Id.* at 118 n.13. Despite the fact that the Department of Natural Resources had already directed it to clean the site, and that the only allegation concerning "approval" was the designation of a lead agency, that court found that a claim had been sufficiently stated under § 30:2276(G)(3) to survive the dismissal stage of the litigation. *Id.* at 118.

Additionally, the exact interactions between the Department of Natural Resources and the Department of Environmental quality, the nature of the directions given by the Department of Natural Resources, and the timing and extent of Plaintiff's response will be essential factors in determining the applicability of the statute to the present action. Those factors are not known at this point in the proceedings but will undoubtedly become apparent through further discovery. Accordingly;

**IT IS ORDERED** that the **Motion to Dismiss for Failure to State a Claim upon which Relief May be Granted (Rec. Doc. 7)** filed by Defendant Chevron U.S.A., Inc. is **GRANTED IN PART** and **DENIED IN PART**. It is **GRANTED** as to the claim for attorney's fees under 42

17

U.S.C. § 9607.  It is **DENIED** as to all other claims under 42 U.S.C. § 9607 and La. R.S. § 30:2267.  It is **DENIED WITHOUT PREJUDICE** as to the claims under 42 U.S.C. § 9613.  Plaintiff **SHALL AMEND** its Complaint **within fifteen (15) days of the issuance of this Order** with respect to this claim.

August 21, 2015

_____
JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE